# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **TUPPERWARE BRANDS CORPORATION,** *et al.*, | : | Case No. 24-12156 (BLS) |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| **TUPPERWARE LIQUIDATING TRUST,** by and through **CBMN ADVISORS LLC** d/b/a **UZZI & LALL,** solely in as **LIQUIDATING TRUSTEE**, | : | |
| | : | Adv. Proc. # _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **LILLIAN GARCIA**, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT TO AVOID AND RECOVER
## UNAUTHORIZED POST-PETITION TRANSFERS

Plaintiff, CBMN Advisors LLC d/b/a Uzzi & Lall, solely in its capacity as liquidating trustee (the "Liquidating Trustee") of the Tupperware Liquidating Trust (the "Liquidating Trust"), as successor in interest to certain assets of the above-captioned debtors (collectively, the "Debtors"), by and through its counsel, hereby files this *Complaint to Avoid and Recover Unauthorized Post-Petition Transfers* and, in support thereof, states:

### I.

### NATURE OF THE ACTION

1. This is an adversary proceeding brought in the above-captioned bankruptcy cases (the "Cases") pursuant to Part VII of the Federal Rules of Bankruptcy Procedure seeking to avoid and recover, pursuant to §§ 549 and 550 of the Bankruptcy Code, Transfers (as defined below) of property

of the Debtors' estates to Lillian Garcia ("Defendant"), a former employee of the Debtors, after the commencement of the Case that were not authorized under Title 11 of the United States Code (the "Bankruptcy Code") or by this Court.

2. Specifically, Plaintiff seeks entry of a judgment against Defendant avoiding the Transfers, preserving the Transfers or the value thereof for the benefit of the Trust, as the Debtors' successor in interest, pursuant to section 551 of the Bankruptcy Code, and directing Defendant to pay to Plaintiff an amount to be determined at trial that is not less than the amount of the Transfers, plus interest and costs, pursuant to section 550(a) of the Bankruptcy Code.

## II.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Court retained jurisdiction over the subject matter of this adversary proceeding pursuant to the Article X. of the Plan (as defined below) and paragraph 134 of the Confirmation Order (as defined below).

4. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

5. In accordance with Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff confirms its consent to the entry of a final order by the Court in connection with this Complaint to the extent that

it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory basis for the relief sought herein are §§ 105, 549, 550 and 551 of the Bankruptcy Code and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

## III.

## PARTIES

8. Plaintiff is CBMN Advisors LLC d/b/a Uzzi & Lall, solely in its capacity as Liquidating Trustee of the Liquidating Trust.

9. Plaintiff is informed and believes that Defendant is an individual with a residence at 4830 Osprey Dr. South, Apt 401, St. Petersburg, Florida 33711. Plaintiff is informed and believes that prior to the commencement of the Cases, Defendant was employed by the Debtor Tupperware Brands Corporation (f/k/a Tupperware Corporation) ("Sponsor Debtor") as its Chief Human Resources Officer.

## IV.

## GENERAL BACKGROUND

10. On September 17–18, 2024 (the "Petition Dates"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Cases are jointly administered under Case No. 24-12156.

11. On May 9, 2025, the Court entered an order [Docket No. 7018] (the "Confirmation Order") confirming the *Joint Chapter 11 Plan of Liquidation of Tupperware Brands Corporation and its Debtor Subsidiaries* dated March 6, 2025 [Docket No. 562] together with a Plan Supplement [Docket No. 742] (collectively, the "Plan"). The Plan became effective on June 10, 2025 (the "Effective Date") [Docket No. 741].

12. On the Effective Date, in accordance with the Plan, the Confirmation Order and a *Liquidating Trust Agreement*, the Liquidating Trust was established, all of Debtors' rights, title, and interests in and to the Liquidating Trust Assets (as defined in the Plan), including those "Retained Causes of Action" listed in the Plan Supplement, were transferred to the Liquidating Trust (Plan at Article IV., Section B.; Plan Supplement at Exh B), and the Liquidating Trustee was appointed as liquidating trustee of the Liquidating Trust with the power to, among other things, pursue, prosecute, resolve, compromise, and settle the Retained Causes of Action.

13. The Retained Causes of Action transferred to the Trust include, among other things, Avoidance Actions (as defined in the Plan) and all claims and causes of action against Defendant for post-petition disbursements made in connection with the Rabbi Trust (as defined below) (Plan Supplement at Exh B, ¶¶ 10 and 11) (collectively, the "Avoidance Rights and Actions").

V.

THE RABBI TRUST

14. Prior to the Petition Dates, Sponsor Debtor established, and was the sponsor of, the Tupperware Corporation Executive Deferred Compensation Plan (the "EDCP") under Title I of the Employee Retirement Income Security Act of 1974, the participants of which were a select group of management or highly compensated employees ("Plan Participants"). In order for Sponsor Debtor to meet its liabilities under the EDCP, it also established a rabbi trust (the "Rabbi Trust") with Fidelity Management Trust Company ("Fidelity") serving as trustee for the purpose of providing the deferred compensation to the Plan Participants. The terms and conditions of the Rabbi Trust are memorialized in a Trust Agreement between the Sponsor Debtor and the Trustee, dated as of March 1, 2002 ("Rabbi Trust Agreement"). A true and correct copy of the Rabbi Trust Agreement is attached hereto as Exhibit A (*See also*, *Motion of Debtors for an Order Pursuant to Sections 105(A), 363, 541, 542, And 543 of the Bankruptcy Code (I) Authorizing (A) the Debtors to Exercise Their Ownership Rights*

*Over Certain Trust Assets and Monetize Such Assets and (B) The Termination of the Trust and (II) Directing the Trustee to Cease All Payments from the Trust Fund Pursuant to the Trust Agreement* filed by the Debtors with the Court on April 18, 2025 at Exhibit A [Docket No. 654-1]).

15. The Rabbi Trust Agreement was designed to provide certain highly compensated executives and management with additional tax deferred compensation only so long as the Debtors remained solvent.

16. Section 2(c) of the Rabbi Trust Agreement

> Participants and their beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Participants and their beneficiaries against the Sponsor. Any assets held by the Trust will be subject to the claims of the Sponsor's general creditors under federal and state law in the event of Insolvency, as defined in Section 14(a).

In addition, Section 14(a) of the Rabbi Trust Agreement states that

> Trustee shall cease disbursement of funds for payment of benefits to Plan Participants and their beneficiaries if the Sponsor is Insolvent. Sponsor shall be considered "Insolvent" for purposes of this Trust Agreement if (i) Sponsor is unable to pay its debts as they become due, or (ii) Sponsor is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

In addition, Section 14(b) of the Rabbi Trust Agreement states that

> In the event of the Sponsor's Insolvency, the principal and income of the Trust shall be subject to claims of general creditors of the Sponsor under federal and state law as set forth below.

In addition, Section 14(e) of the Rabbi Trust Agreement states that

> If at any time Trustee has determined that Sponsor is Insolvent, Trustee shall discontinue disbursements for payments to Participants or their beneficiaries and shall hold the assets of the Trust for the benefit of Sponsor's general creditors. Nothing in this Agreement shall in any way diminish any rights of Participants or their beneficiaries to pursue their rights as general creditors of Sponsor with respect to benefits due under the Plan or otherwise.

Thus, pursuant to the Rabbi Trust Agreement, all disbursements of funds to Plan Participants or their beneficiaries were required to cease if the Debtor Sponsor became subject to a bankruptcy proceeding, in which case, all assets of the Rabbi Trust must be held for the benefit of and subject to the claims of general creditors.

17. By order entered on May 6, 2025 [Docket #693] (the "<u>Rabbi Trust Order</u>"), the Court confirmed that the Rabbi Trust assets constituted property of the Debtors' estates under §541 of the Bankruptcy Code, authorized the Debtors to exercise any and all of their ownership rights over the assets in the Rabbi Trust and monetize such assets, directed Fidelity to return the assets remaining in the Rabbi Trust to the Debtors, and authorized the Debtors and Fidelity to terminate the Rabbi Trust.

18. On the Effective Date, the Avoidance Rights and Actions, including those arising from disbursements made in connection with the Rabbi Trust, were transferred to the Liquidating Trust.

## VI.

## **THE TRANSFERS TO OR FOR THE BENEFIT OF DEFENDANT**

19. As a highly compensated Chief of Human Resources Officer, Defendant was a Plan Participant, whose employment with the Debtors terminated before the Petition Dates, and all of her rights, claims and interests in the Rabbi Trust and the disbursements therefrom under the EDCP arose solely prior to the Petition Dates.

20. After the Petition Dates, on December 2, 2024, a distribution was made from the Rabbi Trust to Defendant as a Plan Participant in the amount of $388,762.10, by electronic transfer directly deposited into Defendant's account in the amount of $316,382.20 plus $72,379.90 in federal tax withholdings remitted to the Internal Revenue Service ("<u>IRS</u>") on behalf of Defendant (collectively, the "<u>Transfers</u>") under a *Form 945 Annual Return of Withheld Federal Income Tax* and reported to the IRS under Defendant's social security number via IRS Form W-2 for the year 2024, a copy of which was duly delivered to Garcia.

21. The Transfers were transfers of property of the estates that were not authorized under the Bankruptcy Code or by this Court.

22. By letter dated July 25, 2025, the Liquidating Trustee sent a letter to Defendant (the "Demand Letter") demanding the return of the Transfers to Liquidating Trust. As of the date hereof, Defendant has not returned the Transfers to Liquidating Trust.

## VII.

## CLAIM FOR RELIEF
*(Avoidance and Recovery of Post-Petition Transactions Pursuant to 11 U.S.C. §§ 549 and 550)*

23. Plaintiff repeats and re-alleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

24. On and at all times after the Petition Dates, the Sponsor Debtor was insolvent within the meaning of the Rabbi Trust Agreement and, therefore, in accordance with the Rabbi Trust Agreement, all assets in the Rabbi Trust became subject to claims of the Sponsor Debtor's general creditors.

25. On the Petition Dates and at all relevant times thereafter, all assets in the Rabbi Trust were property of the Debtors' estates within the meaning of § 541(a) of the Bankruptcy Code.

26. The Transfers from the Rabbi Trust were property of the Debtors' estates within the meaning of § 541(a) of the Bankruptcy Code.

27. The Transfers occurred after the Petition Dates.

28. The Transfers were not authorized under the Bankruptcy Code or by the Court.

29. By reason of the foregoing, the Liquidating Trustee, on behalf of the Liquidating Trust, as successor in interest to the Avoidance Rights and Actions, may avoid the Transfers pursuant to § 549(a)(1) of the Bankruptcy Code.

30. The Transfers were made directly to or for the benefit of Defendant. Defendant is the initial transferee of $316,382.20 of the Transfers, and Defendant is the person for whose benefit and

under whose social security number $72,379.90 of the Transfers were remitted to the Internal Revenue Service.

31. By reason of the foregoing, the Liquidating Trustee, on behalf of the Liquidating Trust, as successor in interest to the Avoidance Rights and Actions, may recover the Transfers or the value of such property from Defendant pursuant to section 550(a)(1) of the Bankruptcy Code.

WHEREFORE, Plaintiff prays that the Transfers be avoided and judgment be entered against Defendant as on the Claim for Relief in the amount of $388,762.10 plus interest at the legal rate from the date of the Transfers, together with all costs of this action, and for such other and further relief as the Court deems just and proper.

Dated: December 15, 2025
      Wilmington, Delaware

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: 302-803-4600
dklauder@bk-legal.com

-and-

Halperin Battaglia Benzija, LLP
Alan D. Halperin, Esq.
Debra J. Cohen, Esq.
40 Wall Street, 37th Floor
New York, NY 10005
Telephone: (212) 765-9100
Email: ahalperin@halperinlaw.net
Email: dcohen@halperinlaw.net

*Counsel to the Liquidating Trustee*